CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

OCT 05 2023

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| JESSE HINES TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:22-cv-00130 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DR. RONALD HOWELL, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff Jesse Hines Turner ("Turner") brought this action alleging that she was constructively discharged from her role as a County Executive Director ("CED") with the United States Department of Agriculture's ("USDA") Farm Service Agency ("FSA") in retaliation for reporting suspected fraud. Turner claims that, through their actions related to her alleged constructive termination, various individuals involved with the FSA violated (1) the False Claims Act ("FCA"), (2) Virginia's whistleblower-protection laws, and (3) her First Amendment rights.

The matter is before the court on a motion to dismiss filed by the following individuals (collectively, "Defendants"): (1) Dr. Ronald Howell ("Howell") and Ashlee Dalton ("Dalton" and, together with Howell, "Director Defendants") and (2) Robert L. Waller, Wade Blair, IV, Benjamin Easley, Ricky Luck, and Linda Yates (collectively, "COC Defendants"). Defendants move to dismiss Turner's claims for several reasons, including insufficient service of process and failure to exhaust administrative remedies. The motion has been fully briefed and argued and is ripe for decision. For the reasons discussed below, the court will grant Defendants' motion and dismiss Turner's claims.

## I.   BACKGROUND AND STATEMENT OF FACTS

### A.  The FSA and county committees

This matter involves numerous individuals, positions, and levels of the FSA's regulatory scheme. (*See* Compl. [ECF No. 1].) It is therefore helpful to begin with a brief overview of the FSA and its history.

The FSA is a USDA agency that establishes federal programs relating to agriculture and carries out these programs using a unique committee system. *See History of USDA's Farm Service Agency*, Farm Serv. Agency, https://www.fsa.usda.gov/about-fsa/history-and-mission/agency-history/index (last visited October 5, 2023) [hereinafter FSA History]; Joshua Ulan Galperin, *The Death of Administrative Democracy*, 82 U. Pitt. L. Rev. 1, 7–23 (2020) [hereinafter Galperin] (discussing FSA committees and their distinct features). The agency traces its roots back to the 1930s and is a vestige of the New Deal. FSA History. The Agricultural Adjustment Act of 1933 established the Agricultural Adjustment Administration ("AAA") with the goal of "stabiliz[ing] farm prices at a level at which farmers could survive." *Id.* As part of this effort, the law created state and county committees to oversee a federal program that paid farmers to voluntarily reduce their crop production. *Id.*; Galperin at 16. Within a few years of the AAA's formation, the electoral structure of the county committees— "in which local farmers elect their peers to [the] committees"—"was a widespread custom." Galperin at 8, 17.

Following the AAA, the New Deal established another farming-focused agency within the USDA: the Farm Security Administration. *See* FSA History. The Farm Security Administration's early roles included providing credit, farm and home management, and

technical supervision programs for farmers. *Id.* Over the next several decades, various laws reorganized the USDA's farming agencies, including creating the Farmers Home Administration ("FHA"). *Id.* In 1953, the USDA underwent another reorganization, resulting in the formation of the Commodity Stabilization Service ("CSS") and the formal identification of state and county committees as Agricultural Stabilization and Conservation committees. *Id.* Eight years later, the CSS became the Agricultural Stabilization and Conservation Service ("ASCS"). The ASCS lasted for over 30 years, and "field activities in connection with [its] farm programs continue[d] to be carried out through an extensive network of state and county field offices." *Id.*

The FSA was eventually established as a combination of the FHA and ASCS by the Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994,[1] which also established a formal structure for FSA state and county committees. Pub. L. No. 103-354, 108 Stat. 3178 (1994); *see* Galperin at 17. The committee structure was refined in 2002. *See* Farm Security and Rural Investment Act of 2002, Pub. L. No. 107-171, 116 Stat. 134 (2002); Galperin at 17. And in 2012, the USDA amended its regulations governing the FSA's state and county committees to create the general structure that remains in place today. *See* Selection and Functions of Farm Service Agency State and County Committees, 77 Fed. Reg. 33063, 33063, 33065–66 (June 5, 2012) [hereinafter 2012 FSA Regulation Amendments] (amending regulations in 7 C.F.R. Part 7 to, among other things, ensure representation of socially disadvantaged farmers, create more open county-committee elections, clarify

---

[1] The original FSA also included the Federal Crop Insurance Corporation, but it became the Risk Management Agency in 1996. *See* FSA History.

committee-membership requirements, and remove obsolete personnel and political-activity procedures).

Under the current operating structure, county committees locally administer FSA programs with oversight by a state committee. *See* 7 C.F.R. § 7.23. State committees are composed of members appointed by the Secretary of Agriculture. 7 C.F.R. § 7.4. County committees are made up of members elected by farmers in each county and members appointed by the Secretary of Agriculture. 7 C.F.R. §§ 7.5, 7.11–12, 7.17. County committees appoint CEDs to implement the FSA's and county committee's programming and directives locally. 7 C.F.R. §§ 7.23, 7.25.

## B. Statement of facts

Specific to this matter, the following facts are taken from Turner's complaint and, at this stage, are presumed true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In 2019, Turner was appointed as CED for Pittsylvania County, Virginia, by Pittsylvania's local county committee ("COC"). (Compl. ¶ 7.) In that role, Turner was managed by: the COC; Howell, the State Executive Director for Virginia; and Dalton, a District Director. (*Id.* ¶¶ 5, 7.) The COC operates with a five-member board, which at all relevant times was composed of COC Defendants, who are elected and appointed.[2] (*Id.* ¶ 4.) Both Howell and Dalton are "employees of the USDA." (*Id.* ¶ 7.) As CED, Turner was responsible for

---

[2] Turner states that COC Defendants are all "elected/appointed by local farmers." (Compl. ¶ 4.) It appears that two COC Defendants may be non-voting advisory members whose appointments were authorized by the Secretary of Agriculture. (Br. Supp. Mot. Dismiss at 2–3 [ECF No. 16]); *see* 7 C.F.R. § 7.4. The parties, however, do not provide further details on this point or otherwise differentiate between COC Defendants. Therefore, the court treats COC Defendants as a group at this stage of the proceedings.

implementing the COC's directives, and her duties were subject to federal regulation. (*Id.* ¶¶ 8–9, 11); *see* 7 C.F.R. § 7.25.

Turner claims that she was exceptional at her job. (Compl. ¶ 10.) But she contends that trouble began when she uncovered evidence suggesting that some farmers were submitting fraudulent applications for the NAP Forage Program, which operates effectively as an insurance program for farmers to cover losses from low crop yields. (*See id.* ¶¶ 13–16.) At a COC meeting in February 2022, Turner informed the COC that she suspected that certain NAP Forage Program applications were fraudulent; to confirm her suspicions, she had requested supporting yield documents from some of those farmers. (*Id.* ¶¶ 17–18.) Around the same time, Turner also expressed similar concerns to Howell. (*Id.* ¶ 20.) At the following month's COC meeting, Dalton told Turner that the COC "was not behind her," she "should disapprove the [purportedly fraudulent] applications and move on," and she should not report any fraudulent applications to the USDA Office of the Inspector General ("OIG") for further investigation. (*Id.* ¶¶ 21–22 (cleaned up).)

Turner followed one of Dalton's directives and disapproved the applications. (*Id.* ¶ 23.) She went against Dalton's other directive, however, and reported a supposedly fraudulent application to the OIG. (*Id.* ¶ 22.) Because of this, Turner claims that she faced adverse consequences at the hands of Dalton and Howell, including being admonished by Howell "to discourage her from investigating fraud on the FSA." (*Id.* ¶¶ 22, 26.)

In May 2022, Turner allegedly faced additional consequences after she began reporting directly to Howell rather than Dalton. (*Id.* ¶¶ 28–32.) Howell required Turner to attend trainings at various FSA duty stations, but he would not tell Turner where she needed to report

until shortly before a training was scheduled to occur. (*Id.* ¶¶ 29–30.) Some of these trainings were several hours away from Turner's duty station in Chatham, Virginia. (*Id.* ¶ 31.) At one of the duty stations, she did not receive any training because the employees there had not been told about the training prior to her arrival. (*Id.*)

After five weeks of "trainings," Turner asked Howell when she could return to her Chatham duty station. (*Id.* ¶ 32.) In response, Howell told her that she "cannot go back to Pittsylvania County" because she "won't be successful there"; he allegedly made it clear that Turner would never return as CED of Pittsylvania County. (*Id.* ¶ 33.) Turner understood this to be in response to her attempts to uncover fraud on the FSA and to mean that she was constructively discharged effective August 13, 2022. (*Id.* ¶¶ 33–34.) As a result, she resigned her position.

Following her departure as CED, Turner commenced an action with the Merit Systems Protection Board ("MSPB") in connection with her alleged constructive discharge, which the USDA opposed. (*See id.* ¶ 35.) The USDA argued that the MSPB did not have jurisdiction over Turner because she is not a federal employee under Title 5 of the United States Code. (*Id.* ¶¶ 35, 67 n.1.)[3]

Subsequently, on December 23, 2022, Turner filed this action asserting the following claims: (1) unlawful retaliation in violation of the FCA by all Defendants in their personal and official capacities; (2) unlawful discrimination and retaliation in violation of Virginia's whistleblower-protection laws by COC Defendants in their personal and official capacities;

---

[3] Defendants proffer that the MSPB dismissed Turner's action in November 2022 for lack of jurisdiction. (Br. Supp. Mot. Dismiss at 4.) But because the complaint does not state the outcome of the MSPB proceeding, the court does not consider its result at this stage.

and (3) unlawful retaliation in violation of Turner's First Amendment rights by all Defendants in their official capacities. (*See* Compl.)

Because she filed her complaint on December 23, 2022, Turner was required to serve (or request an extension to serve) Defendants by March 23, 2023. *See* Fed. R. Civ. P. 4(m). But Defendants allege that she did not provide sufficient service by that date.[4] (Br. Supp. Mot. Dismiss at 7–8.) On May 11, 2023, Defendants moved to dismiss Turner's claims under Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6). (Br. Supp. Mot. Dismiss at 1.)

## II.   STANDARDS OF REVIEW

### A.  Federal Rule of Civil Procedure 12(b)(1)

When a challenge to subject-matter jurisdiction is raised under Rule 12(b)(1), "the burden of proving subject-matter jurisdiction is on the plaintiff." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* "The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* Dismissal under Rule 12(b)(1) is appropriate

---

[4] The court also identified the allegedly defective service and ordered Plaintiff to show cause why the case should not be dismissed for improper service under Fed. R. Civ. P. 4(m). (Show Cause Order, Apr. 13, 2023 [ECF No. 11].)

"if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

## B.  Federal Rule of Civil Procedure 12(b)(5)

When a defendant moves to dismiss for insufficient service of process under Rule 12(b)(5), "[t]he plaintiff bears the burden of proving adequate service." *Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 304 (4th Cir. 2016). If a defendant receives "actual notice of the commencement of the action . . . the provisions of Rule 4[] should be liberally construed to effectuate service and uphold the jurisdiction of the court." *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963). "[E]very technical violation . . . or failure of strict compliance may not invalidate service of process." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). Still, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Id.* Ultimately, the court has broad discretion in deciding a Rule 12(b)(5) motion. *See Scott*, 673 F. App'x at 304.

## C.  Federal Rule of Civil Procedure 12(b)(6)

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "Although [this] evaluation is generally limited to a review of the allegations of the complaint itself . . . a court may properly take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertions devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (cleaned up) (quoting *Twombly*, 550 U.S. at 555, 557).

## III.   ANALYSIS

Defendants raise multiple arguments in support of their motion to dismiss Turner's claims under Rules 12(b)(1), 12(b)(5), and 12(b)(6). (Br. Supp. Mot. Dismiss at 1–2.) As discussed below, the court will grant Defendants' motion to dismiss all of Turner's claims for insufficient service of process, and, alternatively, for failure to exhaust administrative remedies. Because all of the claims can be dismissed for these reasons, the court will not address Defendants' claim-specific arguments.

### A.  Insufficient service of process

Defendants move to dismiss Turner's complaint in its entirety under Rule 12(b)(5), contending that Turner did not serve them in the manner required by Rule 4. (Br. Supp. Mot. Dismiss at 7–8); *see* Fed. R. Civ. P. 4. Specifically, Defendants assert that Turner's purported service did not satisfy Rule 4(e).[5] (Br. Supp. Mot. Dismiss at 7–8); Fed. R. Civ. P. 4(e). Rule

---

[5] Defendants correctly focus on Rule 4(e) because its individual-service requirements apply regardless of whether they are federal officers or employees. *See* Fed. R. Civ. P. 4(e), (i); (Br. Supp. Mot. Dismiss at 7–8). Here, Defendants are federal officers and employees, so the requirements of Rules 4(i)(2) and (3) apply because Turner sued them in their individual and personal capacities. *See* Fed. R. Civ. P. 4(i)(2)–(3); *infra* section III.B.1 (discussing why Defendants are federal officers and employees). Under these sections, Turner is required to serve both the United States according to Rule 4(i)(1) and each Defendant individually according to Rule 4(e). *See* Fed. R. Civ. P. 4(e), (i). Even if Defendants were not federal officers or employees, Turner would still be required to serve them individually according to Rule 4(e). *Id.* 4(e).

4(e) requires that a plaintiff serve a defendant personally, at his or her dwelling or usual place of abode, through an agent authorized or appointed to receive service of process, or in a manner prescribed by state law. Fed. R. Civ. P. 4(e). To survive Defendants' motion to dismiss on this ground, Turner "bears the burden of proving adequate service." *Scott*, 673 F. App'x at 304. If she cannot show that proper service was completed "within 90 days after the complaint [was] filed, the court . . . must dismiss the action" unless Turner demonstrates "good cause for the failure." Fed. R. Civ. P. 4(m).

### 1. Non-compliance with Rule 4's service requirements

Turner attempted to serve Defendants in their individual capacities by delivering copies of the summons and complaint to people she alleges were Defendants' authorized agents; she did not serve Defendants personally, at their dwellings or usual places of abode, or in compliance with state law. (Affs. Service Summons and Compl. [ECF Nos. 3–9]; Br. Opp'n Mot. Dismiss at 20 [ECF No. 20]). As Defendants represented at the hearing, these purported agents appear to be no more than colleagues at Defendants' workplaces who are unrelated to this action. And Defendants, through sworn declarations, claim that they did not authorize any agent to accept service of process on their behalf. (*See* Defs.' Decls. [ECF No. 22-1].)

Due to Defendants' claim of insufficient service, Turner is required to show that Defendants appointed the individuals who the summons and complaint were delivered to "for

---

Defendants do not argue that service to the United States was insufficient. Turner appears to have complied with Rule 4's requirement for serving the government, but only after the United States Attorney's Office for the Western District of Virginia notified her attorney of deficiencies in service. (*See* Letter from Christopher R. Kavanaugh & Krista Consiglio Frith, U.S. Att'y Off. W.D. Va., to N. Winston West, Strelka Emp. L. (Mar. 8, 2023) [ECF No. 10] [hereinafter USAO Letter]; Pl.'s Resp. Show Cause Order Exs. 1–7 [ECF Nos. 12-1 to 12-7].) When the court identified deficiencies in the personal service of Defendants, however, it does not appear that Turner undertook similar curative measures.

the specific purpose of receiving process." *See* 4A Charles Alan Wright & Arthur D. Miller, Federal Practice and Procedure § 1097 (4th ed. 2023). "[I]n the absence of an actual appointment, service of process is ineffective" even if an individual held themselves out as having authority to receive service for a defendant. *McCombs v. Granville Exempted Vill. Sch. Dist.*, No. 2:07-cv-00495, 2009 WL 467066, at *4 (S.D. Ohio Feb. 24, 2009) (quoting *Whisman v. Robbins*, 712 F. Supp. 632, 636 (S.D. Ohio 1988)); *see also O'Meara v. New Orleans Legal Assistance Corp.*, No. 90-cv-4893, 1991 WL 110401, at *2 (E.D. La. June 10, 1991) (ruling that serving a co-worker at a defendant's workplace was insufficient despite the co-worker indicating she would accept service). It is also of no avail if the individuals who Turner *thought* were Defendants' agents in this matter were Defendants' actual agents for other purposes. *See Harbison v. Virginia*, No. 3:10-cv-297, 2010 WL 3655980, at *9–10 (E.D. Va. Aug. 11, 2010) (stating that service on an attorney representing the defendant in unrelated matters was ineffective), *report and recommendation adopted*, 2010 WL 3655977 (E.D. Va. Sept. 10, 2010), *aff'd*, 413 F. App'x 626 (4th Cir. 2011).

Turner has not met her burden of proving adequate service because she has not provided evidence to rebut Defendants' declarations that they had not appointed "anyone to accept personal service" for them. (*See* Defs.' Decls.) Even if the individuals who received the summons and complaint represented themselves as able to receive service for Defendants, that would still not prove that they were actually Defendants' authorized agents for purposes of accepting service. *See* Fed. R. Civ. P. 4(e)(2)(C); *see, e.g., McCombs*, 2009 WL 467066, at *4. Therefore, the court must conclude that Turner's service did not comply with the requirements of Rule 4.

## 2.  Actual notice does not remedy insufficient service

Although she did not meet Rule 4's requirements, Turner contends that her insufficient service of process should be excused because "Defendants had actual notice of the claims" and "any imperfections regarding service of process were inadvertent." (Br. Opp'n Mot. Dismiss at 20.) Receipt of actual notice by a defendant warrants a "liberal construction" of Rule 4 where "every technical violation . . . or failure of strict compliance may not invalidate the service of process." *Armco*, 733 F.2d at 1089. But "[a]ctual notice does not equate to sufficient service of process, even under the liberal construction of the rules." *Scott*, 673 F. App'x at 305. "[T]he rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Armco*, 733 F.2d at 1089. This especially applies when a plaintiff fails to serve a defendant properly despite being warned about insufficient service before Rule 4(m)'s 90-day time limit expires. Fed. R. Civ. P. 4(m); *see Crawford v. Holman*, No. 7:20-cv-000488, 2021 WL 4453620, at *2, *6 (W.D. Va. Sept. 29, 2021); *see also Chien v. Grogan*, No. 1:16-cv-1470, 2017 WL 1091504, at *2 (E.D. Va. Mar. 23, 2017) (dismissing a complaint for insufficient service of process when "Plaintiff made no additional efforts to serve Defendants properly" despite the court "caution[ing] Plaintiff . . . that [his] method of service did not comply with the Rules").

To be sure, Defendants received actual notice of the claims against them, but only through service on the government and after Defendants' attorney warned Turner that her prior service attempts did not to comply with Rule 4. (*See* Br. Opp'n Mot. Dismiss at 20; USAO Letter). Over a month after this warning from Defendants' attorney, the court also notified Turner that "it d[id] not appear that proper service ha[d] been effected." (Show Cause

Order at 1.) Turner, however, still has not demonstrated that she has cured—or even attempted to cure—her insufficient service of Defendants in their individual capacities. (*See* Br. Opp'n Mot. Dismiss at 20). Furthermore, her claim that "any imperfections regarding service of process were inadvertent" does not demonstrate good cause that would excuse the insufficient service. (*Id.*); *see Scott*, 673 F. App'x at 306–07 (ruling that a plaintiff did not demonstrate good cause where his service attempts lacked diligence).

The service requirements under Rule 4(e) are clear, and Turner plainly did not comply with them by delivering the summons and complaint to individuals who were not Defendants' authorized agents. Courts routinely excuse mere technical violations when the error is minor, such as the complaint incorrectly listing a party's first name or missing part of an exhibit. *See Delaney v. Marsh*, No. 7:08-cv-00465, 2010 WL 1212569, at *2 (W.D. Va. Mar. 25, 2010) (citing *United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872 (4th Cir. 1947)) (incorrect first name); *Oak Plaza, LLC v. Buckingham*, No. 22-cv-231, 2023 WL 2537661, at *6–7 (D. Md. Mar. 16, 2023) (missing part of an exhibit). But Turner's non-compliance was more than a mere technical violation; it is a "substantial defect" that actual notice does not cure. *See Scott*, 673 F. App'x at 306; *see also Dillow v. Va. Polytechnic Inst. & State Univ.*, No. 7:22-cv-00280, 2023 WL 2320765, at *5 (W.D. Va. Mar. 2, 2023) (dismissing the plaintiff's claims for insufficient service despite the defendants having actual notice of the lawsuit). "To hold otherwise would eviscerate the clear requirements of Rule 4," particularly when both the court and Defendants' counsel assisted Turner by notifying her of the apparent insufficient service. *Scott*, 673 F. App'x at 306.

For these reasons, Turner's claims against Defendants will be dismissed without prejudice, as required by Rule 4. Fed. R. Civ. P. 4(m).

## B. Failure to exhaust administrative remedies

As an alternative ground for dismissing the complaint in its entirety, Defendants contend that Turner failed to exhaust the administrative remedies that were available to her, a failure that would be fatal to her claim under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). (Br. Supp. Mot. Dismiss at 8–9.) Federal law requires that, prior to filing suit against a USDA officer or employee, the individual must exhaust all administrative appeal procedures established by the Secretary of Agriculture. *See* 7 U.S.C. § 6912(e).

In determining if the claims should be dismissed on this ground, the determinative issue is whether Defendants are USDA officers or employees. For the reasons set forth below, each Defendant is a USDA officer or employee, and Turner did not exhaust available administrative remedies against them. Therefore, the court must also dismiss her claims on this ground.

### 1. Defendants as USDA officers and employees

Based on the facts in Turner's complaint, each Defendant is a USDA officer or employee. The parties agree that Director Defendants (*i.e.*, Dalton and Howell) are USDA employees. (Compl. ¶ 7; *see* Br. Supp. Mot. Dismiss.) But they disagree about whether COC Defendants (*i.e.*, the five COC board members) are USDA officers.[6] (*See* Reply Supp. Mot. Dismiss at 6–8 [ECF No. 22]; Br. Opp'n Mot. Dismiss at 6–8, 12–15.)

---

[6] As Turner correctly points out, a federal regulation explicitly prevents COC Defendants from being USDA employees. (Br. Opp'n Mot. Dismiss at 7); 7 C.F.R. § 7.18(b)(7). The parties do not point to, and the court is not aware of, any statue or regulation defining the term "officer" for purposes of the USDA's administrative-exhaustion requirements.

Whether FSA county committee members are federal officers appears to be a question of first impression in the Fourth Circuit. Seemingly, most other circuits have not directly addressed this question either, but an Eighth Circuit case involving the FSA's predecessor agency (ASCS) found that county committee members are federal officers for immunity purposes. *See Gross v. Sederstrom*, 429 F.2d 96, 99 (8th Cir. 1970). Additionally, other cases involving aspects of the FSA's county structure have viewed the county committees through a similar lens. *See Graham v. Johanns*, No. 2:07-cv-453, 2008 WL 3980870, at *4 (S.D. Ohio Aug. 21, 2008) (collecting cases). Although persuasive, these decisions are not binding. Therefore, the court considers the following two questions to determine if COC Defendants are federal officers in this matter: whether COC Defendants are federal personnel—as opposed to state or local personnel—and, if so, whether they are officers. The court answers both of these questions in the affirmative.[7]

### i. COC Defendants as federal personnel

At first blush, it does not appear that COC Defendants should be classified as part of the federal government, let alone as federal officers. Turner's complaint is replete with state and local references that portray COC Defendants as community farmers who are elected by their peers to manage regional agriculture programs. (*See* Compl. ¶¶ 4, 5, 8, 11, 37, 43.) But

---

[7] The court recognizes that the selection process for FSA county committee members, as federal officers, may conflict with the Appointments Clause because the committee members are usually elected by local farmers. *See* U.S. Const. art. II, § 2, cl. 2; 16 U.S.C. § 590h(b); 7 C.F.R. § 7.11. Choosing the committee members in this manner may be in tension with the requirements that federal officers be appointed and that "[t]he people do not vote for the 'Officers of the United States.'" *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492, 497–98 (2010). But that issue is not currently before the court. Therefore, to "avoid[] the unnecessary adjudication of federal constitutional questions," the court will not decide that issue here. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 294 (1982).

upon closer examination, it becomes evident that the COC "function[s] as a [USDA] agency," and that COC Defendants are federal personnel. *See Gross*, 429 F.2d at 98.

Under the umbrella of the USDA—one of the federal government's 15 executive departments[8]—COC Defendants comprise a local county committee that administers FSA programming. 7 C.F.R. §§ 7.2, 7.23. In carrying out this programming, COC Defendants work with other federal-government personnel and entities. Numerous federal statutes and regulations govern—and provide the source of authority for—COC Defendants' conduct in performing their duties. *See* 16 U.S.C. § 590h; 7 C.F.R. §§ 7.1–7.34. And COC Defendants must take a federal oath of office pledging "that they will faithfully, fairly, and honestly perform to the best of their ability all of the duties devolving on them as committee members." 7 C.F.R. § 7.21(b); *see also Cannady v. United States*, 155 F. Supp. 2d 1379, 1383 (M.D. Ga. 2001) (finding that a county-level FSA employee was a federal employee because "her activities were governed by an oath of office in which she swore to carry out the procedures of the . . . Department of Agriculture . . . and the purpose of her work was to carry out USDA programs"). In contrast, Turner does not point to any state or local laws that apply to COC Defendants or otherwise undermine their connection to the federal government. (*See generally* Compl.)

Still, Turner contends that COC Defendants are local, rather than federal, personnel simply because they are not federal employees.[9] (*See* Br. Opp'n Mot. Dismiss at 7–8, 12.) To

---

[8]  *See The Executive Branch*, https://www.whitehouse.gov/about-the-white-house/our-government/the-executive-branch/ (last visited October 5, 2023).

[9] Turner's argument that COC Defendants are local officials also contradicts her assertions relating to service of process. In her response to the court's Show Cause Order, Turner asserted that Rules 4(i)(2) and (3) governed the service of Defendants in this matter. (Pl.'s Resp. Show Cause Order ¶¶ 1, 5.) But these Rules only apply if

support her argument, Turner primarily relies on an FSA informational brochure, the federal regulation that prevents USDA employees from serving on an FSA county committee, and a single case. (*See id.* at 7–8 (citing *Levering v. Hinton*, No. 2:07-cv-989, 2008 U.S. Dist. LEXIS 85051, at *9 (S.D. Ohio Sep. 25, 2008)).) None of these is sufficient to carry the day.

Turner's position incorrectly equates the definition of "employee" with "personnel." Though the two are related, they are not necessarily synonymous. Put another way, an individual can fall under the umbrella of federal "personnel" without being a federal "employee." *Compare Employee*, *Black's Law Dictionary* (11th ed. 2019), *with Personnel*, *Black's Law Dictionary*. Furthermore, the *Levering* decision Turner cites is an outlier; the decision cuts against numerous other courts that recognize FSA county-level individuals as federal personnel, even though they do not fall within the Civil Service Reform Act's ("CSRA") definition of "employee." *See Graham*, 2008 WL 3980870, at *4; *Kubacki v. U.S. Dep't of Agric. Farm Serv. Agency*, No. 12-15142, 2013 WL 2319336, at *6 (E.D. Mich. May 28, 2013). Applying Turner's own logic, it follows that "if the employees who are hired under [the] COC" are federal personnel, then COC Defendants, as members of the COC, are also federal personnel. (*See* Br. Opp'n Mot. Dismiss at 8.)

In sum, while COC Defendants may not fit as cleanly in the federal bureaucracy as others, they are nevertheless federal personnel.

---

Defendants are federal officers or employees. Therefore, Turner's own actions appear to concede that each Defendant is a federal officer or employee.

### ii. COC Defendants as USDA officers

Although COC Defendants are federal personnel, further analysis is necessary to determine if they are USDA officers. Federal officers are grouped into two categories: principal officers and inferior officers. *See Buckley v. Valeo*, 424 U.S. 1, 125–26, 126 n.162 (1976). At issue in this matter is whether COC Defendants are federal inferior officers.[10]

Historically, the "original public meaning of 'Officers of the United States' . . . encompassed all federal civil officials with responsibility for an ongoing statutory duty." *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2056 (2018) (Thomas, J., concurring) (cleaned up) (citing Jennifer L. Mascott, *Who Are "Officers of the United States"?*, 70 Stan. L. Rev. 443, 564 (2018) [hereinafter Mascott]). This original meaning has narrowed, but it is still not overly restrictive.

Two factors elucidate if an individual is a federal officer under the Supreme Court's current precedent: whether the person (1) holds a "continuing office established by law" and (2) "exercises significant authority pursuant to the laws of the United States." *See Brooks v. Kijakazi*, 60 F.4th 735, 740 (4th Cir. 2023) (cleaned up) (quoting *Lucia*, 138 S. Ct. at 2051). COC Defendants satisfy both factors.

As to the first factor, courts have provided limited guidance on what characteristics make a position a continuing office established by law. In *Lucia*, the Supreme Court noted that certain indicia of this include a position being held on an "ongoing, rather than a temporary or episodic basis," and its "duties, salary, and means of appointment" being specified by statute. 138 S. Ct. at 2052 (cleaned up) (citing *Freytag*, 501 U.S. at 881). While helpful, these

---

[10] Principal officers include "ambassadors, ministers, heads of departments, and judges." *See Freytag v. Comm'r*, 501 U.S. 868, 884 (1991). No one contends that COC Defendants fall into this category.

examples are a non-exhaustive list of characteristics that do not all need to be satisfied for a position to be a federal office. *See Lucia*, 138 S. Ct. at 2056 (Thomas, J., concurring) (discussing how the Supreme Court's precedents set forth examples of what is sufficient, but not necessary, for a position to be a federal office); *see also* 31 Opinion of Office of Legal Counsel 73, 115–22 (2007) (discussing certain criteria, including emoluments, that are common—but not essential—elements of a federal office). Similarly, in decisions that have followed *Lucia*, few courts have provided additional guidance about what constitutes a continuing office established by law. *See, e.g.*, *Carr v. Saul*, 141 S. Ct. 1352, 1357 (2021) (repeating but not elaborating on *Lucia*'s determination that Security and Exchange Commission ALJs held a continuing office established by law); *Brooks*, 60 F.4th at 740 (same). The Second Circuit, however, has clarified this factor by distilling rules from a variety of Supreme Court and lower-court decisions. *See United States v. Donziger*, 38 F.4th 290, 296–98 (2d Cir. 2022). Notably, "'continuing position' does not exclusively refer to permanent positions." *Id.* at 296 (citing *Morrison v. Olson*, 487 U.S. 654, 664, 671 n.12 (1988)). If a position is not permanent, the following characteristics of the position are considered to determine if it is a federal office:

> First, . . . the position must not depend on the identity of the person occupying it, and the duties should continue, though the person be changed . . . . Second, the position must not be transient or fleeting . . . . Third, the duties of the position must be more than incidental to the regular operations of government.

*Id.* at 297.

In this matter, COC Defendants' positions are not permanent—*see* 16 U.S.C. § 590h(b)(5)(B)(iv) (stating that a county-committee member's term of office "shall not exceed 3 years")—but they satisfy each of the *Donziger* criteria for being a continuing office established

by law. First, the COC committee positions do not depend on who occupies them. They are positions created by—and whose duties are defined by—statutes and regulations and continue even if different people are elected to the COC. *See* 16 U.S.C. § 590h(b); 7 C.F.R. §§ 7.11, 7.23. Second, COC Defendants' positions are not transient or fleeting. The Supreme Court has viewed transient or fleeting positions as those in which a person is hired to perform a short-term, discrete task. *See Freytag*, 501 U.S. at 881. For example, neither a special master hired by a court to perform discrete tasks on a "temporary, episodic basis" nor a merchant appraiser hired to ascertain the value of goods in a particular instance are federal officers. *See id.*; *Auffmordt v. Hedden*, 137 U.S. 310, 326–27 (1890). In contrast, a special prosecutor who had served for three years did not hold a transient or fleeting position and was a federal officer. *See Donziger*, 38 F.4th at 297. Like the officer in *Donziger*, COC Defendants' positions are not ephemeral: they serve for at least three years, and during their terms they are specifically responsible for carrying out USDA programs, rather than performing only discrete tasks. *See id.*; 16 U.S.C. § 590h(b)(5)(B)(iv); 7 C.F.R. §§ 7.21, 7.23. Third, COC Defendants' duties are more than incidental to the regular operation of government; COC Defendants play a key role in the FSA by carrying out its programs at the county level and hiring and overseeing the CED. *See* 16 U.S.C. 590h(b)(5)(D); 7 C.F.R. §§ 7.2, 7.23. The FSA itself states that "county committees are a critical component of the day-to-day operations of [the] FSA." U.S. Dep't Agric. Farm Serv. Agency, *County Committee Elections*, https://www.fsa.usda.gov/news-room/county-committee-elections/index (last visited October 5, 2023). Viewed together, these three characteristics conclusively establish that COC Defendants hold positions that are continuing offices established by law.

Turning to *Lucia*'s second factor, COC Defendants "exercise significant authority pursuant to the laws of the United States." 138 S. Ct. at 2051 (cleaned up). As an initial matter, COC Defendants exercise their authority "pursuant to the laws of the United States" because their authority is grounded, exclusively, in duly enacted federal statutes and regulations. *See, e.g.*, 16 U.S.C. § 590h; 7 C.F.R. §§ 7.1–7.34. Next, to determine if their authority is "significant," the court must analyze "the significance of the duties and discretion" that COC Defendants possess. *See Lucia*, 138 S. Ct. at 2052 (cleaned up) (quoting *Freytag*, 501 U.S. at 881). Aside from this general standard, binding precedent does not provide much "more detailed legal criteria" about what constitutes significant authority for a position. *See id.*; *accord United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1985–86 (2021); *Brooks*, 60 F.4th 735. But the Supreme Court has made clear that individuals can have significant authority—and be federal officers—even if their decisions are not final or are otherwise subject to review. *See Lucia*, 138 S. Ct. at 2052.

As a result of the broad standard set forth in *Lucia*, courts evaluate if an individual exercises significant authority using a fact-intensive approach that compares the individual's authority to that of government personnel previously recognized as officers. *See Buckley*, 424 U.S. at 126; Mascott at 459–60. Personnel previously recognized by the Supreme Court as federal officers include "a district court clerk"; "thousands of clerks in the Departments of the Treasury, Interior, and the other departments"; "a postmaster first class"; "Federal Election Commission commissioners"; "an independent counsel"; "Tax Court special trial judges"; and executive-branch ALJs. *See Bandimere v. S.E.C.*, 844 F.3d 1168, 1173–74 (10th Cir. 2016) (cleaned up) (collecting "Supreme Court cases spanning more than 150 years"); *Brooks*, 60 F.4th at 740 (discussing ALJs). Comparing the authority of these positions to that of FSA

county committee members confirms that COC Defendants exercise a level of authority representative of federal officers.

Fundamentally, COC Defendants are responsible for carrying out USDA programs at the local level. *See* 16 U.S.C. § 590h(b)(5)(D)–(E); 7 C.F.R. §§ 7.2, 7.23. As part of this wide-ranging responsibility, COC Defendants have the power to hire, oversee, and fire the CED, along with being able to reverse CED decisions. *See* 7 C.F.R. §§ 7.23(b)(1), 7.25. Additionally, COC Defendants must conduct hearings and investigations; direct election outreach; review, approve, and certify forms, reports, and documents; and recommend boundary and program changes to the FSA state committee. 7 C.F.R. § 7.23(b). They also make binding decisions that substantially impact the rights of private parties. *See, e.g.*, 7 U.S.C. § 7001; *id.* § 718.306; *see also Hixson ex rel. Hixson Farms v. U.S. Dep't of Agric.*, No. 15-cv-02061, 2017 WL 2544637, at *7 (D. Colo. June 13, 2017) (discussing an FSA county committee decision that involved a private interest of approximately $100,000). In exercising these powers, COC Defendants have "broad responsibility for carrying out various federal programs," and they perform far more than "ministerial tasks." *See Gross*, 429 F.2d at 99; *Freytag*, 501 U.S. at 881.

Of course, COC Defendants hold different positions—and therefore exercise different authority—than personnel previously recognized as officers. For instance, they lack the depth of an ALJ's adjudicatory power or an independent counsel's prosecutorial power. *See Lucia*, 138 S. Ct. at 2052 (ALJs); *Morrison*, 487 U.S. at 696 (independent counsel). But they have a greater scope of authority than just presiding over certain enforcement proceedings, like ALJs, or investigating a specific matter, like an independent counsel. *See Lucia*, 138 S. Ct. at 2052; *Morrison*, 487 U.S. at 696. Their authority is also markedly more significant than that of other

recognized federal officers, such as a district court clerk whose authority entailed "keep[ing] the records of the Court, and receiv[ing] the fees provided by law for his services." *In re Hennen*, 38 U.S. 230, 258 (1839).

In addition to their significant duties, COC Defendants also have discretion in carrying out their responsibilities. Two primary ways in which they exercise this discretion is through their powers of hiring and firing the CED—who executes the COC's policies and is responsible for the day-to-day operations of the county office—and ruling on private parties' applications for USDA benefit programs. *See* 7 C.F.R. §§ 7.23(b), 7.25; *see generally* 7 C.F.R. pt. 718. Like other inferior officers, COC Defendants are subject to oversight and their decisions can be reviewed, but that does not negate the authority they otherwise exercise or prevent them from being federal officers. *See Lucia*, 138 S. Ct. at 2052; 7 C.F.R. § 7.23.

At bottom, comparing COC Defendants to other personnel recognized as federal officers confirms that COC Defendants exercise significant authority under the laws of the United States. This authority, combined with COC Defendants holding a continuing office established by law, proves that COC Defendants are USDA officers. *See Lucia*, 138 S. Ct. at 2051.

### 2. Failure to exhaust administrative remedies

Each Defendant is a USDA officer or employee; therefore, Turner was obligated to exhaust her administrative remedies before bringing this lawsuit. 7 U.S.C. § 6912(e) (requiring any person who brings a lawsuit against USDA employees or officers to first "exhaust all administrative appeal procedures established by the Secretary [of Agriculture] or required by

law"). Because she did not, the court will grant Defendants' motion and dismiss Turner's complaint in its entirety.

"The doctrine of exhaustion of administrative remedies is well established in . . . administrative law." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (quoting *McKart v. United States*, 395 U.S. 185, 193 (1969)). It "provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Pakdel v. City & Cnty. of S.F.*, 141 S. Ct. 2226, 2230 (2021) (quoting *Woodford*, 548 U.S. at 88–89). "Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).

The court begins by reviewing the plain language of 7 U.S.C. § 6912(e). *See Iovino v. Michael Stapleton Assocs., Ltd.*, 600 F. Supp. 3d 610, 618 (W.D. Va. 2022) (citing *McCarthy*, 503 U.S. at 144). The statute requires that "a person . . . exhaust all administrative appeal procedures established by the Secretary [of Agriculture] or required by law" before the person can bring a lawsuit against an "officer or employee of the [USDA]." 7 U.S.C. § 6912(e). Therefore, two conditions must be satisfied for the statute's exhaustion requirement to apply to Turner's claims: first, Defendants must be officers or employees of the USDA; second, USDA administrative appeal procedures must have been available to Turner, *see Gold Dollar Warehouse, Inc. v. Glickman*, 211 F.3d 93, 98–99 (4th Cir. 2000). If both conditions are satisfied, Turner must exhaust the available administrative appeal procedures before she can bring suit in federal court.

Here, both conditions are satisfied. As discussed at length, each Defendant is a USDA officer or employee. And for the reasons set forth below, Turner had administrative appeal procedures available to her.

In connection with the failure-to-exhaust issue, the parties' briefs spent considerable time discussing the USDA's exhaustion statute but never actually identified what administrative appeal procedures were or were not available to Turner. Both parties view 7 C.F.R. § 7.28 as setting forth the relevant appeal procedures. (*See* Br. Supp. Mot. Dismiss at 9; Br. Opp'n Mot. Dismiss at 18, 20.) It does not. This regulation states (a) that adverse personnel actions will be taken against county committee members, CEDs and county office employees who fail to do their jobs, and (b) that any person who is suspended or removed from office must receive "advance written notice of the reason for such action and . . . any right of further review and appeal." 7 C.F.R. § 7.28. The parties seem to infer that, because the FSA must notify a person removed from office of "*any* right of further review and appeal"—*i.e.*, *if* the person has a right of further review or appeal, then the FSA must notify them of it—each person who is removed must actually *have* a further review or appeal right. The court declines to make the same inference. Instead, the FSA's handbook on county-office personnel management is instructive about the available appeal procedures for discharged and aggrieved employees.[11] *See* Farm Serv. Agency, County Office Personnel Management 22-PM (Revision 1, Amend. 92), pt. 10 [hereinafter FSA Handbook];[12] *see also United States v. Massey*, 380 F.3d

---

[11] In 2012, amendments to 7 C.F.R. Part 7 removed certain sections with "obsolete" appeal procedures related to personnel actions because FSA handbooks and directives set forth the applicable procedures. *See* 2012 FSA Regulation Amendments, at 33065–68.

[12] At this stage of the proceeding, the court "may properly take judicial notice of matters of public record without converting [the] motion to dismiss into a motion for summary judgment." *Megaro*, 66 F.4th at 157. The

437, 440 n.6 (8th Cir. 2004) (discussing that the FSA Handbook contains relevant procedures for personnel actions).

The FSA Handbook provides that a CED, like other FSA county employees, has the right to file grievances related to their working conditions and appeal adverse employment actions up to the FSA's Deputy Administrator for Field Operations. *See* FSA Handbook pt. 10. It also sets forth detailed procedures for a grievance or appeal, including the required timing, the person's right to representation, and the right to witnesses.[13] *See id.* These procedures were available to Turner because, by her own admission, she was discharged from her position as CED because of her working conditions. (Compl. ¶¶ 29–34.)

Despite the availability of USDA administrative hearing and appeal procedures, Turner does not allege that she pursued, let alone exhausted, these procedures before bringing this action.[14] Instead, she contends that the process was unavailable to her because Howell did not provide her "any articulated performance-based reason" for the conditions that resulted in her constructive discharge.[15] (*See* Br. Opp'n Mot. Dismiss at 18–19.) But apart from her conclusory

---

FSA Handbook is a matter of public record that can be readily accessed on the FSA's website. Accordingly, for purposes of judicial economy, the court takes judicial notice of the FSA Handbook regarding county-office personnel procedures, which is determinative of this issue.

[13] The FSA Handbook and 7 C.F.R. § 7.28 also require the FSA to notify discharged personnel of any right of appeal. But even if the FSA did not provide Turner with this notice, she still could not bring suit in this court without first exhausting her administrative remedies. *See St. Bernard Par. Gov't v. United States*, 916 F.3d 987, 997 (Fed. Cir. 2019). The lack of notice may excuse a delay in Turner instituting an administrative proceeding, but she would still be required "to follow the congressionally dictated path of exhausting [her] administrative remedies . . . [before] obtaining judicial review from a district court." *Id.*

[14] The MSPB proceeding that Turner initiated was not an available administrate remedy for her because she is not an employee under the CSRA. *See Hedman v. Dep't of Agric.*, 915 F.2d 1552, 1554–55 (Fed. Cir. 1990).

[15] Turner also argues that her failure to exhaust should be excused on futility grounds because any challenge she brought through the USDA's procedures would have been dismissed "out of hand." (Br. Opp'n Mot. Dismiss at 20.) This argument is unavailing. A party's failure to exhaust is only excused in "extraordinary circumstances," and Turner's broad and conclusory claims fail to show why the USDA's available procedures

statements, Turner does not offer any support for why the USDA hearing and appeal process was foreclosed because Howell did not provide a sufficient explanation for his actions. The court fails to see why Turner could not have set forth her grievances related to her constructive discharge through the USDA's procedures—with or without an explanation from Howell—like she did in her complaint and apparently attempted to do through an MSPB proceeding (Compl. ¶ 35). *Cf. Green v. Brennan*, 578 U.S. 547, 552–53 (2016) (discussing how, under Title VII of the Civil Rights Act of 1964, a plaintiff who was constructively discharged must exhaust his administrative remedies before suing his employer in court).

Turner's bald assertion that the appeal process was unavailable to her is also belied by the FSA Handbook, which does not limit the grievance and appeal procedures available to a person whose working conditions result in a constructive discharge. *See* FSA Handbook, pt. 10. Moreover, the speciousness of her argument is apparent because she has not pointed to a single case to support it.

Exhaustion of administrative remedies is not a meaningless hoop meant to hinder individuals' access to the courts. The exhaustion statute's requirement that claims be brought to the USDA in the first instance "allows the agency to clarify its position about the conduct of the accused official[s]" and creates a factual record on which a court can better evaluate the claims. *See Munsell v. Dep't of Agric.*, 509 F.3d 572, 591 (D.C. Cir. 2007). Additionally, "[b]ringing the complaint directly to the [USDA] . . . may allow the agency to remedy the alleged offending conduct and, at the least, avoid continuing . . . harm." *Id.* Finally, a finding that Turner did not

---

would have been futile for her to pursue. *See Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 606 (5th Cir. 2007).

have available appeal procedures here risks creating an end-run around the USDA's exhaustion statute in which individuals could skirt the USDA's appeal process through little more than resigning from their job and then claiming constructive discharge.

In sum, Turner did not exhaust available administrative appeal procedures before bringing her lawsuit against Defendants, who are USDA officers and employees. Therefore, the court is obligated to dismiss her claims.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be granted and Turner's complaint will be dismissed without prejudice.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 5th day of October, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE